**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00125-HBB**

**CHRISTOPHER PAYNE**                                                      **PLAINTIFF**


**V.**


**KILOLO KIJAKAZI, ACTING COMMISSIONER[1]**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**


**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Christopher Payne ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both Plaintiff (DN 14) and Defendant (DN 19) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fᴇᴅ. R. Cɪᴠ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered March 11, 2021 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1   Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

<u>FINDINGS OF FACT</u>

Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on November 14, 2017 (Tr. 15, 206-09, 210-21).   Plaintiff alleges to have become disabled on January 1, 2010, as a result of back and shoulder pain, bulging discs, arthritis, and pain in hip (Tr. 15, 62-63, 74-75, 89, 102).   These claims were initially denied on March 9, 2018, and the claims were again denied upon reconsideration on June 12, 2018 (Tr. 15, 72-73, 84-85, 86-87, 100, 113, 114-15).   At that point, Plaintiff filed a written request for a hearing before an administrative law judge (Tr. 15, 140-41).

Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee on March 26, 2019 (Tr. 15, 32-34).   Virtually present at the hearing from Owensboro, Kentucky was Plaintiff and his attorney Sara Martin Diaz[2] (Id.).   During the hearing, Tina Stambaugh testified as a vocational expert (Tr. 15, 34, 58-60).

On May 28, 2019, the ALJ opined an unfavorable decision for Plaintiff (Tr. 15-25).   At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 6, 2017, the alleged onset date[3] (Tr. 17).   At the second step, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease, dysfunction of major joints (including left shoulder disorder), and degenerative changes of the right hand (Tr. 18).   The

---

2   The ALJ's decision lists Plaintiff's attorney as Samuel Kyle LaMar (Tr. 15).   This is consistent with the reconsideration determination and the request for a hearing before an administrative law judge, where the representative's name was listed as Mr. LaMar (Tr. 88-89, 101-02, 140-41).   However, when reviewing the administrative hearing transcript, the ALJ reported that Plaintiff was represented by Sara Martin Diaz (Tr. 32-34). When considering this conflict of information, the Court will defer to the administrative hearing's transcript and list Plaintiff's counsel virtually present at the hearing as Sara Martin Diaz.

3   On January 23, 2019, Plaintiff's counsel wrote to the ALJ to amend Plaintiff's alleged onset date from January 1, 2010, to November 6, 2017 (Tr. 191).   This amendment is corroborated by the ALJ noting the change to Plaintiff's alleged onset date during the administrative hearing (Tr. 37).

ALJ also found Plaintiff's depression to be nonsevere (Tr. 18).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 19).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following limitations: Plaintiff can sit for 30 minutes and stand for 30 minutes each at a time; he can occasionally push and/or pull with lower extremities and push and/or pull with upper extremities; he can occasionally climb ramps/stairs but never climb ladders/ropes/scaffolds; he can occasionally balance, kneel, stoop, crouch, and crawl; he can frequently reach overhead and all around with the upper extremities; and he can have occasional exposure to extreme cold, humidity, vibration, moving mechanical parts, and unprotected heights (Tr. 19-20).   The ALJ found Plaintiff is unable to perform any past relevant work (Tr. 23).

After this finding, the ALJ continued to the fifth step, where the ALJ also considered Plaintiff's RFC, age, education, and past work experience, as well as testimony from the vocational expert, to find that Plaintiff is able to perform other jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since November 6, 2017, through the date of the decision (Tr. 24) (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 204-05).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

## The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

5

Challenge to Vocational Expert's Testimony

1.  Arguments of the Parties

Plaintiff argues that the ALJ "improperly relied on the inadequate testimony of the Vocational Expert" (DN 14-1 PageID 1642).   The issue that Plaintiff presents is that "substantial evidence does not support that the jobs proffered by the [vocational expert] exist in significant numbers in the economy or are reliable" (Id.).   Plaintiff focuses on the vocational expert's testimony which included the repeated phrase, "at a reduced number" (Id. at PageID 1643) (citing Tr. 58).   It was "clear error" for the ALJ to note that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") while simultaneously finding that there were jobs in the national economy that Plaintiff could perform (Id.).   Moreover, Plaintiff critiques the vocational expert's methodology to calculate the number of jobs available to Plaintiff (Id. at PageID 1643-44).

In contrast, Defendant claims that the vocational expert identified 320,000 jobs in the national economy which an individual with Plaintiff's RFC, age, education, and background could perform, and the expert's testimony was consistent with the DOT (DN 19 PageID 1680). Defendant contends that no argument or challenge was raised to the vocational expert's testimony or methodology at the administrative hearing, so the ALJ "more than satisfied" her responsibilities under SSR 00-4p and can reasonably rely on the vocational expert's testimony in making their determination (Id. at PageID 1681).   Additionally, "the Sixth Circuit has held that an ALJ may properly rely on [a vocational expert's] testimony even when it conflicts with the DOT" (Id. at PageID 1682) (citing Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003); Conn v. Sec'y of HHS, 51 F.3d 607, 610 (6th Cir. 1995)).   Defendant also distinguishes a case cited by Plaintiff,

6

Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010), by noting that Cunningham discussed whether two jobs identified by the vocational expert were obsolete (Id. at PageID 1683). "It did not, as Plaintiff suggests, remand the case based on its uncertainty about whether 30,000 jobs in the state of Ohio constitute a 'significant' number" (Id.).   Thus, Defendant posits that this Court should affirm the ALJ's decision (Id.).

    2.   Discussion

    The Court will begin with Plaintiff's use of the "clear error" standard in his argument (see 14-1 PageID 1643).   The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.   See FED. R. CIV. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under FED. R. CIV. P. 59(e). See Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.   Instead, Plaintiff is utilizing the "clear error" standard in his challenge of the final decision of the Commissioner (DN 1).   But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   See 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue,

661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

Turning to the five-step evaluation, the burden of proof does not shift to the Commissioner to establish plaintiff's ability to work until the fifth step of the evaluation.   Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990).   At the fifth step, it is the Commissioner's burden to show that there exists a significant number of jobs in the local, regional and national economies that the claimant can perform, given their residual functional capacity.   See Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).   The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of their limitations.   See Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).   In making a determination at step five of the sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience and residual functional capacity.   20 C.F.R. §§ 404.1520(f), 416.920(f).

A vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a claimant is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y, Dep't. of Health & Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments.   Varley, 820 F.2d at 779.   If the ALJ comes forward with evidence of job

availability, the claimant must rebut that they can perform the identified job.   Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam).   The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein.   Hardaway v. Sec'y of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam).   Moreover, there is no requirement that the ALJ's hypothetical question to the vocational expert reflect the plaintiff's unsubstantiated complaints.   Id.   Furthermore, the vocational expert identified a significant number of jobs that Plaintiff could perform, which is the legal standard that the Commissioner must meet.   See e.g., McCormick v. Sec'y of Health & Human Servs., 861 F.2d 998, 1000, 1002 (6th Cir. 1988) (4,000 to 5,000 jobs in Michigan); Hall v. Bowen, 837 F.2d 272, 274 (6th Cir. 1988) (1,350 to 1,800 jobs in the nine county area of Dayton, Ohio); accord Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479-80 (9th Cir. 1989) (citing Hall) (1,255 jobs in Los Angeles/Orange County); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (citing Hall) (500 jobs in St. Louis area); Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs locally, 1,600 jobs in Georgia, and 80,000 nationally).   It is for the Commissioner to evaluate the reliability of the vocational expert's testimony and to determine what constitutes a significant number.   See Hall, 837 F.2d at 275.

Social Security Ruling 00-4p imposes on the Administrative Law Judge an affirmative duty to ask the vocational expert whether there is a conflict between the vocational expert's testimony and information in the DOT.   If there appears to be a conflict, the Administrative Law Judge will elicit from the vocational expert an explanation for the conflict.   Id.   Next, the Administrative Law Judge will resolve the conflict by deciding whether the explanation given by the vocational

expert is reasonable and provides a basis for relying on the vocational expert's testimony rather than the DOT information.   Id.

Here, the vocational expert identified three jobs that a person with Plaintiff's RFC, age, education, and past relevant work experience (Tr. 24, 58).   These positions were inspectors and sorters, DOT 529.687-114, which had 60,000 jobs nationally; packers, DOT 559.687-074, which had 180,000 jobs nationally; and trimmer, DOT 781.687-070, which had 80,000 jobs nationally (Id.).   However, the vocational expert opined that all jobs in the national economy would be reduced by 50 percent as a result of Plaintiff's sit/stand limitation (Id.).   When asked whether her testimony was consistent with the DOT, the vocational expert answered in the affirmative, "with the exception of [the] opinion regarding jobs at the light level that could be performed with citing even a standing and a reduction of numbers based upon that" (Tr. 59).   "Since those are not characteristics of work outlined in the DOT, [the] opinion regarding those issues is based on [the vocational expert's] experience in the field" (Tr. 59-60).   Cross-examination by Plaintiff's counsel focused on the unscheduled breaks or the absenteeism, both of which would preclude all work in the view of the vocational expert (Tr. 60).

The ALJ's determination details all three of these positions, their DOT number, and the number of jobs in the national economy (Tr. 24).   The ALJ's determination also noted, "Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy" (Id.).   The ALJ reiterated the 50 percent reduction in numbers "to accommodate all portions of [Plaintiff]'s residual functional capacity, and this reduction was based upon her experience and training" (Id.).

Based upon this information, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" (Id.).

Looking to SSR 00-4p, the ALJ inquired whether the vocational expert's opinion was consistent with the DOT. Given that a conflict was evident from the vocational expert's 50 percent reduction, the ALJ elicited a reasonable explanation for this conflict—to accommodate the sit/stand limitations and the characteristics of the positions with the limitations are not in the DOT (Tr. 59-60). The ALJ noted that such a modification was consistent with the vocational expert's training and experience in the field (Tr. 24); *see* (Tr. 60). The ALJ resolved this conflict by favoring the vocational expert's testimony, given that a sit/stand limitation was crafted into Plaintiff's RFC, and found that significant numbers of jobs in the national economy are present that Plaintiff is capable of performing (Id.). At all stages, the ALJ complied with SSR 00-4p.

As for Plaintiff's complaint about whether a significant number of jobs is present in the national economy, the vocational expert testified about three positions that would have a cumulative 320,000 jobs, before the 50 percent reduction (Tr. 24, 58). This would equate to 160,000 jobs in the national economy. Noted above, Plaintiff had the opportunity to cross-examine the vocational expert and did, in fact, utilize that opportunity (Tr. 60). But Plaintiff did not question about the number of actual positions in the national economy could reasonably be expected to accommodate the sit/stand limitations or the vocational expert's methodology in deciding to use a 50 percent reduction in jobs (Id.).

Plaintiff's cited case details that "[t]here is no 'magic number' that qualifies as 'significant' for purposes of satisfying this prong of the disability inquiry." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010) (citing Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988)).

11

However, this case, unlike Plaintiff's arguments to the contrary, does not remand the matter based upon whether 25,000 document preparer jobs and 5,000 security camera monitor jobs in the state of Ohio qualified as significant numbers (DN 14-1 PageID 1644); *see* <u>Cunningham</u>, 360 F. App'x at 615-16.   Instead, the remand was whether the DOT job listings were reliable, given that more current job descriptions were available at the time of the hearing before the ALJ.   <u>Id.</u> at 616.

Therefore, when considering the ALJ considerations, the vocational expert's testimony, and Plaintiff's age, education, past relevant work experience, and RFC, the ALJ's decision to find that a significant number of jobs in exist in the national economy that Plaintiff is capable of performing is supported by substantial evidence.   The determination, as shown above, complies with the applicable law.   As such, Plaintiff is awarded no relief under this challenge.

Challenge to Weight of Plaintiff's Testimony

1.   Arguments of the Parties

Plaintiff contends that the ALJ "erred in failing to accept [Plaintiff]'s testimony as fully credible and in failing to state sufficient reason[s] for doing so" (DN 14-1 PageID 1644).   Plaintiff believes "[t]here is no indication made by his treating providers that he was not credible[, and h]e was honest and cooperative, doing everything in his power to follow through with doctor's orders and to see the specialists they recommended and follow through with their treatment plan" (<u>Id.</u> at PageID 1644-45).   Thus, "[t]here is no plausible explanation given for why the ALJ completely chose to ignore, and even worse, blatantly mischaracterize [Plaintiff]'s testimony regarding his sit/stand limitations" (<u>Id.</u> at PageID 1645) (emphasis omitted).   Citing a Sixth Circuit case, Plaintiff argues that the ALJ discounted his testimony without articulating "valid reasons for doing so" and, instead, "[t]he ALJ erred in her determination that [Plaintiff] was not credible and

12

improperly mischaracterized his testimony in order to avoid a GRID ruling" (Id. at PageID 1646) (citing Blankenship v. Bowen, 874 F.2d 1116, 1123 (6th Cir. 1989)).

Defendant disputes Plaintiff's argument by asserting that "[s]ubstantial evidence [] supports the ALJ's finding that Plaintiff's statements of disability should not be fully accepted" (DN 19 PageID 1676).  "[T]he ALJ identified a wide range of evidence indicating that Plaintiff's allegations were incongruous with the record as a whole[,]" including surgery not being recommended for feet and joint pain, a lack of complaints for hand pain, increased physical therapy improving pain tolerance and physical activity, and Plaintiff's ability to continue working after his alleged onset date (Id. at PageID 1677-78).  Defendant also argues against Plaintiff's contentions by noting that Plaintiff's work history and other evidence is impermissible under SSR 16-3p, the ALJ summarized Plaintiff's statements and "any contradictions reflected the internal inconsistencies of Plaintiff's own testimony," and Plaintiff had not demonstrated that accepting his testimony about his sit/stand limitations would have required greater RFC restrictions (Id. at PageID 1678-80).

2.  Discussion

In assessing a claimant's RFC, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings.  20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.  A claimant's statement that they are experiencing pain or other symptoms will not, taken alone, establish that they is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged.  20 C.F.R. §§ 404.1529(a), 416.929(a).

In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies.   First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition.   If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain."   Id.   When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged.   20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

A plaintiff's level of daily activity is a factor which the Administrative Law Judge may consider in determining the extent to which pain is of disabling severity.   20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990) (As a matter of law, the Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain.).   Also considered in assessing their complaints is the frequency that a claimant has sought treatment for their impairments.   20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). Additionally, another factor that may be considered is whether there are "any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."   20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).   Finally, the medication used to alleviate the alleged pain or other symptoms may be considered.     20 C.F.R.

14

§§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).   Mild medication and infrequency of dosages taken by the claimant do not bear out claims of debilitating pain.   *See* Maher v. Sec'y of Health & Human Servs., 898 F.2d 1106, 1109 (6th Cir. 1989).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified (Tr. 20-21).   In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility.   Since tolerance of pain and/or other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the Administrative Law Judge, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly."   Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)).

The ALJ's determination stated that Plaintiff has continued to work, albeit at a reduced capacity, since his alleged onset date, but the ALJ also included the caveat that Plaintiff testified that jobs take much longer now and Plaintiff relies on other people to help him as well (Tr. 20). This work includes doing "simple household repairs" or minor maintenance work for "a couple hours a day" when the jobs arise (Tr. 37-38).   This work also demonstrates that Plaintiff can lift ten to fifteen pounds, which was the maximum his doctor recommended (Tr. 39).

Plaintiff's Function Report notes that he prepares meals a "[c]ouple of times a week" and does simple household repairs (Tr. 272).   Plaintiff mentions that he goes outside every day, and when he has jobs, Plaintiff can go to the store for materials (Tr. 273).   Plaintiff often goes to church and family gatherings, in addition to hunting, fishing, and hiking (Tr. 274).

Plaintiff's testimony at the administrative hearing contained statements that, after taking his medication, he could stand for two to four hours before sitting down (Tr. 47-48).   However, Plaintiff also testified, "I don't know if I could walk around a city block without having to stop" (Tr. 52), but he could stand for an hour and sit for a half-hour or hour before needing to change positions (Tr. 52-53).   Plaintiff's estimates, though, varied based upon the types of seats and whether they were comfortable (Tr. 53).

While Plaintiff contends that the ALJ mischaracterized his testimony at the administrative hearing (DN 14-1 PageID 1645), the previous paragraph demonstrates that the ALJ relied upon Plaintiff's own testimony and any inconsistency derives from Plaintiff's testimony.   While Plaintiff argues that he should have a sedentary RFC or a GRID analysis, Plaintiff's arguments to this effect are unavailing.   Plaintiff's arguments are hypothetical in nature: "*If the ALJ were to classify him as sedentary . . .*" (Id.) (emphasis added).   Thus, the decision is predicated upon a sedentary RFC.   As discussed later in this opinion, the ALJ's determination to craft a light work RFC is supported by substantial evidence.

Finally, the ALJ found Dr. Taylor's opinion and the State agency opinions to be persuasive (Tr. 22).   Dr. Taylor's own opinion stated that Plaintiff could walk two city blocks without rest or severe pain and that Plaintiff could sit and stand for 30 minutes before changing positions (Tr. 1286).   Moreover, Dr. Taylor noted that Plaintiff could sit and stand up to six hours a day, dependent on what type of day Plaintiff was having (Tr. 1287).   This six-hour mark is consistent with the State agency opinions, which also noted sitting/walking and standing up to six hours of the eight-hour day (Tr. 69, 81, 86, 109).

After considering all of Plaintiff's subjective complaints, the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 20-21).   Even then, the ALJ took these subjective complaints and incorporated them when crafting an RFC that would accommodate Plaintiff's back pain and arthritic pain, as well as his hand and shoulder pain (Tr. 21-22).   The ALJ's crafted RFC went even more restrictive than some of Plaintiff's own testimony, by adding the sit/stand change every thirty minutes (Tr. 19-20), which is more restrictive than the two to four hours that Plaintiff testified he could stand (Tr. 47-48).   The ALJ's opinion discussed Plaintiff's testimony, as well as the medical evidence, in finding that Plaintiff's subjective complaints did not perfectly align with the alleged intensity, persistence, and limiting effects.   Thus, the ALJ's determination about Plaintiff's subjective complaints is supported by substantial evidence and comports with applicable law.   Plaintiff is awarded no relief under this challenge.

Challenge to Weight of Treating Physician's Opinion

1.   Arguments of the Parties

Plaintiff claims that the ALJ improperly "relied primarily on the opinions of the non-examining sources," as well as using "cherry-picked sections of [Plaintiff's treating physician] Dr. Taylor's opinion" (DN 14-1 PageID 1646).   Specifically, Plaintiff points to the absenteeism, sit/stand, and overhead reaching limitations which were present in Dr. Taylor's opinion but not included in the ALJ's opinion (Id. at PageID 1647) (citing Tr. 1285-89).   "The ALJ's reasoning for disregarding th[ese] portions of the opinion were insufficient" (Id.).   Plaintiff states that "[t]he

17

opinion of a treating physician is entitled to more weight than the opinion of a non-treating physician" and that "the opinion of the treating physician must be given 'controlling weight'" (Id.) (citations omitted). Instead, "the ALJ acted as her own medical expert" and found that Plaintiff's "impairments did not render him totally disabled without ever having a physical examination conducted by a Consultative Examiner" (Id. at PageID 1648) (emphasis omitted). Therefore, "the ALJ should have afforded great weight to the entirety of the opinion of Dr. Taylor" (Id.).

Defendant, in turn, maintains that the ALJ "reasonably weighed the persuasiveness of Dr. Taylor's opinion and properly articulated her reasons for the weight given" (DN 19 PageID 1672). "The ALJ reasonably concluded that th[e] opinion was persuasive, but declined to adopt it in full" (Id. at PageID 1674). Dr. Taylor's opinion, in the eyes of the ALJ, was supported and consistent with objective findings in regard to certain limitations on work-related activities and degenerative changes, but the opinion was not supported in terms of Plaintiff's relatively conservative treatment regimen (Id.). Moreover, "[t]he ALJ also found that the more extreme portions of Dr. Taylor's opinion were inconsistent with Plaintiff's mild pain findings and with Plaintiff's daily activities" (Id.). Defendant also confronts Plaintiff's "cherry-picking" allegation by quoting the Sixth Circuit that "cherry-picking" claims are "seldom successful because crediting it would require a court to re-weigh record evidence" (Id. at PageID 1675) (citing DeLong v. Comm'r of Soc. Sec. Admin., 748 F.3d 723, 726 (6th Cir. 2014)). Thus, the "ALJ reasonably evaluated Dr. Taylor's opinion and this Court should affirm her well-reasoned determination" (Id. at PageID 1676).

2. Discussion

The new regulations for evaluating medical opinions are applicable to Plaintiff's case because he filed his applications after March 27, 2017 (Tr. 15, 206-09, 210-21). *See* 20 C.F.R.

18

§§ 404.1520c, 416.920c.   The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[4] in the record, even if it comes from a treating medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).[5]   Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation.   20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).   The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors.   20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).[6]   Of these five factors, the two most important are supportability and consistency.   20 C.F.R. §§ 404.1520c(a) and (b)(2), 416.920c(a) and (b)(2).   Further, the regulation requires administrative law judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   Notably, under the regulations administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion.   20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

---

4   At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings."   20 C.F.R. §§ 404.1513a(a)(1),416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation.   20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

5   The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

6   In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.   20 C.F.R. § 404.1520c(c)(3)(i)-(v).

An administrative law judge will articulate how they considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when the administrative law judge finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same.   20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ found the opinions of Dr. Taylor and the State agency to be persuasive (Tr. 22). The ALJ's determination specifically mentioned the findings of Dr. Taylor, including the sit/stand limitations, lifting limitations, overhead reaching limitations, and the postural limitations (Id.) (citing Tr. 1285-89).   By finding that Dr. Taylor's opinion was persuasive in coming to an RFC determination, and not assigning weight, the ALJ comported with the new regulations.

Specifically, the ALJ was persuaded that Plaintiff could "perform a range of light exertion while sitting and standing in 30-minute increments with some postural and environmental limitations" (Id.).   However, the ALJ was "not persuaded [Plaintiff]'s condition waxes and wanes to the extreme that [Plaintiff] would miss more than 4 days a month or that he would not be able to sit or stand for more than 2 hours at a time" (Id.).   Additionally, "[t]he objective evidence shows degenerative findings, and surgery has not been recommended" (Id.).   Moreover, Plaintiff was able to work part-time and reported instances of little to low pain, which is contrary to Dr. Taylor's opinion (Tr. 22); (*compare* Tr. 37-41, 406, 1028, 1038, *with* Tr. 1285-89).

While Plaintiff may have wanted Dr. Taylor's opinion to be more persuasive in coming to the RFC determination, the ALJ found some persuasiveness and articulated which portions were and were not persuasive (Tr. 22).   There is no evidence to support any assertion that the ALJ "cherry-picked" the medical evidence to substantiate an Unfavorable Finding.   As such, the ALJ's findings as to the opinion of Dr. Taylor is supported by substantial evidence and applicable law.

Challenge to RFC Determination

1. Arguments of the Parties

Plaintiff maintains that the ALJ "failed to recognize the limiting effects of [his] severe conditions" and the "light work" RFC is not supported by substantial evidence (DN 14-1 PageID 1648). Plaintiff asserts, "Based on the objective evidence, Dr. Taylor's statement, and the testimony presented at [Plaintiff]'s hearing, he should have [been] limited to less than sedentary work" (Id. at PageID 1649) (emphasis omitted). A determination otherwise is "clear error" (Id.). Plaintiff posits that he should have been restricted even more in his overhead reaching and ability to walk and stand, in addition to Plaintiff needing to take unscheduled and unpredictable breaks throughout the day (Id. at PageID 1649-50). Utilizing the vocational expert's testimony regarding the unscheduled, Plaintiff argues that he is precluded from all work (Id. at PageID 1650) (citing Tr. 60). As a result, Plaintiff's should have received a Fully Favorable decision (Id.).

Defendant claims that the ALJ reasonably concluded that Plaintiff could perform a range of light work and this decision is supported by substantial evidence (DN 19 PageID 1667). The "ALJ considered Plaintiff's relevant treatment history, including examinations showing improvement radiculopathy over time and no inflammatory arthritis" (Id. at PageID 1668) (citing Tr. 21). The ALJ also noted that Plaintiff was not recommended surgery, "which would suggest they were not as disabling as Plaintiff alleged" (Id.) (citing Tr. 22). Defendant continues by citing to the various treatment findings throughout the ALJ's RFC determination (Id. at PageID 1668-70). As for Plaintiff's arguments, Defendant notes that both State consultants "concluded that Plaintiff could reach frequently overhead with the left arm and had no other reaching limitations[,]" which is supported by Plaintiff's physical therapy notes (Id. at PageID 1671). As for the sit/stand

limitations, Defendant relies upon the physical therapy notes and the State consultants both finding that Plaintiff did not require the additional breaks (Id. at PageID 1672) (citing Tr. 81-83, 96-99).

2.   Discussion

As previously noted in this opinion, the "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed or when a party moves a district court to alter or amend its judgment under Fed. R. Civ. P. 59(e).   Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b); Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.   As noted above, the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   See 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

The RFC finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c).   Thus, in making the RFC finding the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a).

Beginning first with Dr. Taylor's opinion, the Court has already found the ALJ's determination as to Dr. Taylor's opinion to be supported by substantial evidence.   Moreover, the

22

Court has already found the ALJ's determination as to Plaintiff's testimony at the administrative hearing to be supported by substantial evidence.   Therefore, based upon Plaintiff's testimony and Dr. Taylor's opinion, Plaintiff's arguments for a less than sedentary RFC (DN 14-1 PageID 1649) is unavailing.   This leaves the "objective evidence" in the record.

As for Plaintiff's arguments about unscheduled and unpredictable breaks throughout the day (Id. at PageID 1650), it is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."   United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006).   Plaintiff does not cite to any caselaw or evidence in the record to attempt to fashion an argument.   Instead, Plaintiff only relies upon an answer by the vocational expert, where they stated that an individual with Plaintiff's RFC, age, education, and past relevant work experience would be precluded from all work if they needed to take unscheduled breaks (DN 14-1 PageID 1650) (citing Tr. 60).   This is insufficient to form an argument.   As such, Plaintiff's contention for an unscheduled breaks limitation is waived.

Looking to Plaintiff's shoulder and foot pain, Plaintiff asserts that he cannot frequently reach overhead and his foot pain "greatly impacts his ability to walk and stand" (Id. at PageID 1649).   The ALJ discussed Plaintiff's claims of arthritis in multiple joints but noted that "testing was negative for inflammatory arthritis" (Tr. 21) (citing Tr. 1072-1101).   The ALJ also mentioned that Plaintiff was receiving periodic injections in his shoulder and foot for pain (Id.) (citing Tr. 352, 361-76, 982-1023, 1027).   A 2018 Functional Capacity Evaluation by Dr. Glenn

23

Henning, which was referenced by the ALJ, opined that Plaintiff should be limited to occasional above shoulder reaching because Plaintiff could complete one repetition but not ten (Tr. 380). The treatment plan states that Plaintiff was able to lift 32 pounds safely to shoulder height and overhead and that Plaintiff could return to his job with a restriction for 32 pounds or less of shoulder or overhead lifting (Tr. 384).   Additionally, the State agency consultants also noted that Plaintiff should be limited to frequent overhead reaching with his left upper extremity (Tr. 70, 82, 97-98, 110-111).   However, the ALJ took this one step further by limiting Plaintiff to frequent overhead reaching with both upper extremities (Tr. 20).

Finally, with Plaintiff's foot pain, the ALJ's determination noted that Plaintiff received an injection for his foot pain and x-rays show mild degenerative changes (Tr. 21) (citing Tr. 352, 1027).   The decision stated that Plaintiff has continued to work, albeit at a reduced capacity, since his alleged onset date, but the ALJ also included the caveat that Plaintiff testified that jobs take much longer now and Plaintiff relies on other people to help him as well (Tr. 20).   Plaintiff's testimony at the administrative hearing contained statements that, after taking his medication, he could stand for two to four hours before sitting down (Tr. 47-48).   However, Plaintiff also testified, "I don't know if I could walk around a city block without having to stop" (Tr. 52), but he could stand for an hour and sit for a half-hour or hour before needing to change positions (Tr. 52-53).   All these complaints were accommodated by the sit/stand limitations in the RFC.

While Plaintiff may have wanted a more restrictive RFC or more limitations, Plaintiff's argument attempts to have this Court usurp the role of the ALJ and re-assess the medical evidence. For the reasons detailed above, the ALJ's crafted RFC is supported by substantial evidence and complies with applicable law.   Therefore, Plaintiff is provided no relief under this challenge.

24

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. Id. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

H. Brent Brennenstuhl

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

December 16, 2021

Copies:        Counsel of Record

25